UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MEDILESTE VOLTAIRE,<br><br>Petitioner(s),<br>v.<br><br>WARDEN-FACILITY ADMINISTRATOR OF THE NORTHWEST PROCESSING CENTER,<br><br>Respondent(s). | CASE NO. C26-2922-KKE<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner was arrested in May 2026 and has been in immigration detention since then. Dkt. No. 3 ¶ 3. In August 2026, he filed a petition for writ of habeas corpus under 28 U.SC. § 2241. *Id*. Petitioner argues that the Government[1] violated his constitutional right to procedural due process by arresting him without an opportunity to contest his re-detention in a hearing before a neutral decision maker. *Id*. at 7. The Government filed a return (Dkt. No. 7), and the Court finds further briefing unnecessary. Because Petitioner's re-detention is unconstitutional, the Court will grant the petition and order Petitioner's immediate release.

## I. BACKGROUND

Petitioner is a citizen of Haiti who entered the United States without inspection on August 3, 2021. Dkt. No. 8 ¶ 4. On August 11, 2021, United States Border Patrol encountered, arrested,

[1] This order refers to Interested Party United States of America and its agencies collectively as "the Government."

and detained Petitioner. *Id.* ¶ 5. The Government initiated removal proceedings and released him on an order of recognizance ("OREC") on August 15, 2021. *Id.* ¶¶ 6–7, Dkt. No. 9-2, Dkt. No. 9-3.

On December 21, 2025, Petitioner was arrested for first-degree assault—domestic violence. Dkt. No. 8 ¶ 9. When Petitioner appeared for a check-in appointment with Immigration and Customs Enforcement ("ICE") on May 22, 2026, ICE agents learned of Petitioner's pending assault charge via a routine records check. Dkt. No. 9-1 at 3. ICE then cancelled Petitioner's OREC and transported him to the Northwest ICE Processing Center ("NWIPC"). Dkt. No. 9-4, Dkt. No. 9-5. Petitioner was ultimately charged with second-degree assault and that charge was dismissed on August 4, 2026. Dkt. No. 8 ¶ 11. On August 26, 2026, Petitioner appeared at an individual calendar hearing in immigration court, where the immigration judge denied all requested relief and ordered Petitioner removed to Chile, or Haiti in the alternative. *Id.* ¶ 12. Petitioner reserved appeal, and his appeal deadline is September 28, 2026. *Id.*

Petitioner, representing himself, filed a petition for a writ of habeas corpus, contending, among other things, that his re-detention violated due process because he was not given a hearing before a neutral decision maker before or after he was arrested. Dkt. No. 3. For the following reasons, the Court grants the habeas petition.

## II. DISCUSSION

Federal courts have authority to grant writs of habeas corpus to an individual in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). In this case, Petitioner contends that his arrest and detention violate, among other things, the Due Process Clause of the Fifth Amendment to the United States Constitution, which prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. CONST. AMEND. V. The right to due process extends to "all

'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Determining whether an administrative procedure provides the process constitutionally due

> generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id*. at 335.

In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that *Mathews*' three-part test applies in "the immigration detention context." 53 F.4th 1189, 1206–07 (9th Cir. 2022). The Government contends Petitioner is mandatorily detained under 8 U.S.C.§ 1225(b)(2) (Dkt. No. 7 at 2–4), but, as the Government anticipated (*id*. at 4), the Court disagrees that Section 1225(b)(2) provides the applicable detention authority and will instead apply the *Mathews* factors to determine whether Petitioner's re-detention complied with due process.

**A. Petitioner Was Detained Under 8 U.S.C. § 1226(a).**

To determine whether Petitioner's detention complies with due process, the Court must first determine the statutory authority governing Petitioner's detention. *See Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008) ("Where an alien falls within this statutory scheme can

affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention.”).

The Government argues that Petitioner falls within the mandatory detention scheme under Section 1225(b)(2)(A) as an applicant for admission to the United States. Dkt. No. 7 at 2–4. The Court reiterates its agreement with other courts that reject an expansion of the scope of mandatory detention under Section 1225(b)(2) to include Petitioner. Petitioner’s status as a person previously released with conditions, and who has been living in this country for years, counsels against this expanded view of the Immigration and Nationality Act as amended. *See, e.g., Lopez-Campos v. Raycraft*, 175 F.4th 713, 731–32 (6th Cir. 2026) (holding that Section 1225(b)(2) does not apply to noncitizens who have lived in the interior of the United States for years); *Castañon-Nava v. U.S. Dep’t of Homeland Sec.*, 175 F.4th 828, 856 (7th Cir. 2026) (finding that “the text, statutory context, legislative history, and long-standing Executive practice all confirm that Section 1225(b)(2)(A) applies to ‘applicants for admission’ who are seeking lawful entry at the border or ports of entry and not to noncitizens unlawfully living in the country’s interior”); *Barbosa Da Cunha v. Freden*, 175 F.4th 61, 70 (2d Cir. 2026) (“[C]onsistent with the plain text of the statutory provisions at issue here, our holding allows noncitizens like Petitioner, who are already present in the United States and are determined not to be a flight risk or danger to the community, to be released on bond under Section 1226(a) while their removal proceedings are pending.”); *Escobar Salgado v. Mattos*, 809 F. Supp. 3d 1123, 1155 (D. Nev. 2025) (“By subjecting noncitizens like Petitioners to mandatory detention, despite their significant due process rights as individuals present in the U.S., with no consideration of their deep financial, community, and familial ties in the country, the government has proffered an interpretation of a federal statute that engenders constitutional issues.” (citation modified)). “The overwhelming majority of courts to address the issue have agreed that Section 1226(a), rather than the mandatory detention provision of Section

1225(b)(2)(A), applies to a noncitizen in Petitioner's position who has resided in the United States for many years." *Aquino v. LaRose*, No. 25-cv-2904-RSH-MMP, 2025 WL 3158676, at *3 (S.D. Cal. Nov. 12, 2025) (collecting cases). Consistent with these cases, the Court rejects the Government's position on the applicable detention authority and finds that Petitioner falls outside the mandatory detention scheme of Section 1225(b) and was instead detained under Section 1226(a).[2]

**B. Petitioner Has a Protected Interest in His Liberty.**

Turning to the first *Mathews* factor, Petitioner's interest in not being detained is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Petitioner's arrest, after he has lived in the community for years, undoubtedly deprived him of an established interest in his liberty. "When [Petitioner] was released from his initial detention …, Petitioner took with him a liberty interest which is entitled to the full protections of the due process clause." *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025) (citing *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025)).

The Government acknowledges Petitioner's liberty interest yet maintains that he is subject to mandatory detention under Section 1225 (a position that the Court has already rejected) and because he was charged with a crime in violation of his OREC. Dkt. No. 7 at 6–7. But the fact that the Government believes it has a valid basis for revoking Petitioner's OREC does not "obviate the need for the Government to provide [an] individualized hearing" to allow Petitioner to challenge the reasons for his re-detention "prior to re-detaining" him. *Ramirez Tesara*, 800 F. Supp. 3d at 1136 (citing *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025)).

---

[2] Moreover, Petitioner's OREC confirms that Petitioner's arrest and subsequent release on recognizance was "[i]n accordance with [Section 1226]"—*not* Section 1225(b). Dkt. No. 9-3 at 2; *see also* Dkt. No. 9-2 at 2 (charging Petitioner as "an alien present in the United States who has not been admitted or paroled" and *not* as "an arriving alien").

Accordingly, the first *Mathews* factor favors Petitioner.

**C. The Risk of Erroneous Deprivation of Liberty is Moderately High.**

The second *Mathews* factor considers whether a particular process results in a risk of erroneous deprivation of a protected interest. Here, the Court finds that the risk of erroneous deprivation in the absence of a pre-detention hearing is moderately high.

The Government makes no effort to rebut Petitioner's contention that he was given no opportunity to contest the reasons for his re-detention, and argues that this is appropriate due to his "criminal activity that objectively violated the terms of his release." Dkt. No. 7 at 7. And although the Court finds that Petitioner's charge diminishes the risk of erroneous deprivation to an extent, his re-detention before he was convicted of a crime, without any opportunity to show that he is neither a danger to the community nor a flight risk, nevertheless creates a risk of arbitrary detention. *See Reyes v. Hermosillo*, No. 2:26-cv-00270-TLF, 2026 WL 507678, at *5 (W.D. Wash. Feb. 24, 2026) (finding that second *Mathews* factor weighed in petitioner's favor despite "petitioner's arrest and pending charges for a crime" because "at the time of re-detention, she was not provided an opportunity to respond to the allegations that she violated her conditions of release").

Accordingly, the second *Mathews* factor favors Petitioner.

**D. The Government's Interest in Civil Detention Without a Hearing Is Low.**

In the final *Mathews* factor, the Court considers the Government's interest in arresting and detaining Petitioner without a hearing.

The Court finds that the Government's interest in re-detaining non-citizens previously released without a hearing is low. The Government emphasizes its "interest in enforcing compliance with its orders of release on recognizance and returning individuals to custody who violate their terms[,]" but does not explain why providing a hearing would hamper that interest.

Dkt. No. 7 at 9. The Court disagrees that the Government's stated interest is unreasonably inhibited if a pre-deprivation hearing is required. Moreover, Petitioner's criminal charge was filed many months before Petitioner was arrested and re-detained. These facts undermine any suggestion that the Government's interest in revoking release for those who have been accused of conduct that, if true, would violate their conditions of release, is so high that it must be satisfied immediately. Although it would require the expenditure of finite resources (money and time) to provide Petitioner notice and a hearing before arresting and re-detaining him, those costs are outweighed by the risk of erroneous deprivation of the liberty interest at issue. *See, e.g.*, *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest Ortega at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low.").

Accordingly, the third and final *Mathews* factor favors Petitioner.

As the Court's review of the *Mathews* factors suggests, Petitioner's detention does not comport with due process.

## III. REMEDY

Having determined that Petitioner's arrest without a hearing violated his constitutional right to due process, the Court finds Petitioner's detention to be unlawful. The Court must now determine the appropriate remedy.

"In habeas cases, federal courts have broad discretion in conditioning a judgment granting relief." *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013). "Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters as law and justice require." *Id.* (quoting *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987)). "Declaratory and injunctive relief are proper habeas remedies." *Perera v. Jennings*, 598 F. Supp. 3d 736, 742 (N.D. Cal. 2022).

Here, the Court finds that the appropriate remedy for Petitioner's unconstitutional detention is immediate release. *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody.").

Furthermore, as explained in this order, due process requires that Petitioner receives notice and an opportunity to be heard before he may be re-detained for alleged OREC violations. *See, e.g., Llanes Tellez v. Bondi*, 826 F. Supp. 3d 1141, 1154 (N.D. Cal. 2025) ("If the government wishes to re-detain [Petitioner], it must provide him with the pre-detention hearing before a neutral decisionmaker required by due process."). At any future hearing for this purpose, the Government must demonstrate the justification for detention by clear and convincing evidence. *See Doe*, 787 F. Supp. 3d at 1089.

**IV. CONCLUSION**

For these reasons, the Court GRANTS the habeas petition. Dkt. No. 3. The Court ORDERS that Petitioner shall be released from custody no later than September 9, 2026, on the terms of his prior OREC. The Government shall file a status report no later than September 10, 2026, to confirm Petitioner's release in compliance with this order.

Dated this 8th day of September, 2026.

Kymberly K. Evanson
United States District Judge